(87 Misc. Rep. 115)

### In re HOLTZMANN.

(Supreme Court, Special Term for Motions, Kings County. October, 1914.)

1. ELECTIONS (§ 126*)—PRIMARY ELECTIONS—BALLOTS—OPPORTUNITY FOR INSPECTION.

   The official ballot of a primary election should be printed and subject to inspection for a long enough time before election day to enable candidates and voters to see that it complies with the law.

   [Ed. Note.—For other cases, see Elections, Cent. Dig. § 118; Dec. Dig. § 126.*]

2. ELECTIONS (§ 126*)—PRIMARY ELECTIONS—VALIDITY—DEFECTIVE BALLOTS.

   That the official ballot furnished for a primary congressional election did not comply with Election Law (Consol. Laws, c. 17) § 58, in that a portion of the names on the ticket were irregularly numbered, did not invalidate the election, where there was no claim that any one was deceived, and no evidence that any person was caused thereby to vote oth-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erwise than he intended, or that there was fraud which, under section 56, would require the ordering of a new election.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 118; Dec. Dig. § 126.*]

Application by Jacob L. Holtzmann for an order reviewing the action of J. Gabriel Britt and others, constituting the Board of Elections of the City of New York, in preparing and using ·certain ballots in the official primaries of the National Progressive Party in the Tenth Congressional District in Kings County. Application denied.

Jacob L. Holtzmann, of New York City, for petitioner.

Frank L. Polk, Corp. Counsel, of New York City (Charles J. Druhan, of Brooklyn, of counsel), for defendants.

CRANE, J. The official primary election in this state was held on the 28th day of September, 1914, and in the Tenth congressional district one Reuben L. Haskell was returned as having been nominated as the candidate for Congress of the National Progressive party. A motion is now made under section 56 of the Election Law to restrain the board of elections from printing Haskell's name upon the ballots on election day as a candidate for Congress, on the ground that the votes cast for him were void. The application is made by Jacob L. Holtzmann, state committeeman of the National Progressive party from the Twenty-Third assembly district and residing in the Tenth congressional district. It is not made by Haskell's opponent for the nomination.

The Primary Law (section 58 of the Election Law) provides that no signs or writing whatever shall be printed upon the official primary ballot except as provided, and then enacts as follows:

"The names of candidates for nomination for public office * * * shall be numbered consecutively with Arabic numerals, printed in heavy faced type at the left of the name of each candidate, and at the right of the voting space aforesaid, from one upward, beginning with the name of the first candidate for nomination for public office whose name is printed first upon the ballot in the column at the left, and continuing consecutively through the names of said candidates for public office, and then consecutively through the names of the candidates for party positions."

The official ballot furnished for the Tenth congressional district did not comply with the law because of improper numbering, the numbers not running consecutively. The first ten names upon the ticket, beginning with Frederick M. Davenport for Governor, and ending with Bainbridge Colby for United States Senator, were numbered correctly from 1 to 10; the next office upon the ticket, the Representative in Congress, Reuben L. Haskell, was numbered 17 instead of 11; the next, for senator, was numbered 20 instead of 18; the one for assemblyman was numbered 23, instead of 21; the delegates at large for the constitutional convention were numbered beginning with 26, instead of 25, and Jacob L. Holtzmann, the nominee for state committeeman, was numbered 48, instead of 44. After the first 10 names, the entire ticket was improperly and irregularly numbered. If application had

been made to the court before primary day, these ballots would have been thrown out as unofficial and in violation of the law; but it is conceded that there was no time for any such application, as the official ballots for this district were not printed and furnished until the morning of that day.

The relator states that, upon inquiring at the board of elections after the filing of designations, he was informed that Haskell's name would appear as No. 11, and the latter evidently understood likewise, for the sample ballot used by him for electioneering purposes had the number 11 opposite his name. The board of elections has submitted the affidavit of the printer, in which he states that so many changes were made in the names for the various offices in the various parties after the last day to file petitions—that is, within the three weeks preceding the election— that it was impossible to give the candidates consecutive numbering and have the ballot ready for use, and that the method adopted was, as he has termed it, a "war measure."

[1, 2] The public authorities having charge of the elections, therefore, state that it is impossible to comply with all the provisions of the Primary Law, if official ballots are to be used. If this be so, the law should be amended at once. There is no use for an official ballot, if it is not to be correct; and there is little purpose in safeguarding the preliminary steps in the selection of candidates, if the result is to be jeopardized by an improper ballot. The form of ballot as now used is quite complicated. Its pristine simplicity has vanished with the inroads of fraud, and its final make-up, form, or complexion, both for primary and election days, is quite as important as the means used to get names upon it. The official ballot, therefore, should be printed and subject to inspection and ready for use a long enough time before primary or election day to enable everybody to see that it complies with the law. In this instance the official ballot was not printed and delivered until the day of voting, and then was incorrect. It is far better to have no law than a law that is not obeyed.

But does this irregularity render the votes void and annul the nominations? There is no claim that anybody has been deceived, nor is there any evidence before me that any person voted for Haskell who did not intend so to do, or that any person failed to vote against him because of the misnumbering. So far as the papers presented to me show, the votes cast correctly represent the intentions of the voters. If there were anything in this irregularity which would cause the ballot to be a marked ballot, whereby the choice of the voter could be determined by others, then the secrecy, the main purpose of our election machinery, would be removed, and the ballots cast would be absolutely void. Such is the case of People ex rel. Nichols v. Board of Canvassers, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624. To grant the relief asked by the relator, the court would also be obliged to extend it to every other nomination upon the ticket. The ballot could not be valid and good as to the others. The whole ballot was irregular, in that it did not comply with the law; and if it were void, the votes for Governor and every other office in this district were of no avail—that is, there would have been no election. What consequences this would have up-

on the nomination for other. offices, including that of Governor, of course, is impossible to tell, and how far this improper numbering may have extended throughout the state is not known.

Surely, under these circumstances, the court should be very loath to declare an election void and disfranchise a large number of voters, or perhaps a material portion of a political party. A new election might be ordered, at which proper ballots could be furnished; but this the court has no power to order under the statute, unless "the primary has been so permeated by fraud as to render it impossible * * * to determine * * * who was elected thereat." Election Law, § 56. There is before me no evidence of any fraud, but rather a mistake upon the part of the election officials. Likewise there is no evidence before me that this mistake did affect or could have affected the result of the election. Matter of Coughlin, 137 App. Div. 283, 121 N. Y. Supp. 980, affirmed 198 N. Y. 613, 92 N. E. 1082.

My conclusion, therefore, is as follows: (1) That the ballots were improperly numbered, in violation of the Primary Law, because the printer, through constant changes in nominations, could not consecutively number the candidates and have the ballots ready in time. (2) The official ballot should be prepared a sufficient time before use to permit candidates and voters to see that it complies with the law. (3) The irregularity in this instance is such that, if there had been time, the court would have corrected it before primary day; but it is not so vital as to render the entire election of the National Progressive party in this district or elsewhere void.

Motion denied, without costs.